JAMES McCABE, Respondent, *v.* TURNER & BLANCHARD, INC., Appellant.

Second Department, July 22, 1921.

**Ships and shipping — negligence — action at common law to recover for injuries received by longshoreman in falling through hatchway — accident caused by board covering hatchway tilting so that plaintiff fell through — defendant not bound to inspect ledge upon which board rested — charge should have limited issue to question whether foreman should have noticed shortness of board and then inspected ledge beneath.**

In an action by a longshoreman to recover damages for personal injuries received in falling through a hatchway in a boat, it appeared that the hatchway was covered by loose planks resting on a steel ledge; that the covering over the hatchway had been used during the day of the accident; that the accident was caused by the plaintiff stepping on one end of a plank covering the hatchway and the plank tilting so that he fell through the opening to the deck below; that the plank in question was from one

and one-half to two inches shorter than the opening; that the ledge on which it rested was bent down at an angle of about thirty degrees.

*Held,* that the defendant was under no duty towards the plaintiff to look to see whether the steel ledge beneath the boards was bent so that it would not support the plank, for the rule is that in the absence of some readily visible indication of a concealed defect there is no duty upon the stevedore master towards his longshoremen employees to look for a concealed defect.

Without proof that the beams and ledges upon which the plank rested are usually of such width that such a shortness in the plank would make it liable to tilt, no question of negligence was presented.

The charge of the court, even without request, in order to give a fair trial, should have limited the issue of negligence to the question whether or not, in the exercise of due care, defendant's foreman should have noticed that the plank did not come up flush to the combing, and whether or not, if he had noticed such condition, he should in the exercise of due care, have taken the plank up and examined beneath it.

Kelly, J., dissents, with memorandum.

Appeal by the defendant, Turner & Blanchard, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Richmond on the 14th day of January, 1921, upon the verdict of a jury for $10,000, and also from an order, entered in said clerk's office on the same day, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*E. Clyde Sherwood* [*Clarence S. Zipp* and *Benjamin C. Loder* with him on the brief], for the appellant.

*Joseph B. Handy* [*Richard C. Bunzl* with him on the brief], for the respondent.

Mills, J.:

This action was brought to recover damages for personal injuries which the plaintiff claimed to have sustained through the negligence of the defendant. There really was no substantial, or at the most very little, conflict in the evidence. That warranted the jury in finding the following facts:

The plaintiff, an experienced longshoreman, was an employee of the defendant, a corporation engaged in the stevedoring business, that is, in loading or unloading cargoes from vessels at New York city wharves. On May 19, 1920, the defendant, in the ordinary course of its business, was unloading a certain steamer at a Staten Island pier of a cargo consisting

of bundles of burlap, and plaintiff, in defendant's employ, with some twenty-three others of its employees, was at the work, which they began at about seven A. M., the accident happening at three P. M. The bundles or bales of burlap were being hoisted by appropriate tackle through a hatch in the main deck from the first deck below that. In that deck, directly below that hatch, there was a hatchway opening into a lower deck space, which hatchway was closed and did not have to be opened at all in the progress of the work. The accident happened at that lower hatchway. That was about nineteen feet long and fifteen feet wide. Its covering consisted of planks, about twenty in number, which were supported by three iron beams running crosswise under the opening, and by a steel ledge or shelf which ran about under the coaming of the hatch and projected about three inches. The planks were twenty to twenty-two inches wide, three inches thick, and about seven and one-half feet long. They were placed in two tiers running lengthwise so that each tier rested upon the middle beam and also upon the ledge or shelf, with the surface of the planks in position flush with the rest of the deck. The width of the beams does not appear to have been proven. Plaintiff was one of four of defendant's employees who worked upon that second deck attaching the lifting tackle to the bales of burlap. In doing that work they often had to step upon that hatch covering, the planks of which were not in any way nailed or bolted down. That they did without any mishap until about three P. M., when one of the planks, as the plaintiff stepped upon it near the coaming, tilted and he fell through the opening thus made down some thirty-five feet below, and was seriously injured. The plank immediately righted itself. Subsequent examination revealed the fact that the steel ledge upon which that end of the plank rested was bent downwards at an angle of about thirty degrees, and the fact that the plank which had so tilted was from one and one-half to two inches shorter than the full opening, and that its surface was more or less worn. Plaintiff and his companions had walked over that hatch covering continuously — " hundreds of times " — during the day up to that moment, and had noticed nothing about it to attract their attention. It had looked all right to them. Defendant's foremen had

made no special inspection of the covering further than to see that it was apparently in place. There was plenty of light there; and the hatch covering was clear, that is, without anything upon it.

Plaintiff's counsel tried the case upon the theory that the State statute, the Employers' Liability Act as contained in the Labor Law (Art. 14, as amd. by Laws of 1910, chap. 352),* applied; but the trial justice in the end ruled to the contrary, and submitted the case as one at common law. Respondent's counsel here contends that that ruling was mistaken; but of course the case upon this appeal must be tested upon the theory upon which it was submitted. The charge instructed the jury that it was defendant's duty as master of plaintiff to carefully inspect that hatch covering before setting him at work over it, and that, if such an inspection would have discovered the defect which caused that accident, defendant stood charged with negligence — in other words, that in that event the issue of its negligence was proven. The charge, however, was entirely general and did not attempt to limit the application of the stated rule to the facts which the jury might find proven. Indeed, it left the entire matter open so that the jury might even have concluded that in the exercise of due care defendant's foremen should have taken up the planks and thus discovered the bent condition of the ledge; but no request was made to remove that possibility, that is, to take away from the jury that question. Defendant's counsel apparently tried the case upon the theory that defendant was under no duty of inspection of the ship or its appliances whatever.

Happily for the easy disposition by us of this appeal, the law governing it has very recently been definitely decided or at least stated by the Court of Appeals (231 N. Y. 178), in reviewing our recent decision in Liverani v. Clark & Son (191 App. Div. 337). The law as thus settled or stated is simply this — that in the absence of some readily visible indication of a concealed defect, e. g., in that case exterior rusty condition of the ringbolt, here the shortness of the plank, there is no duty

---

* Now Employers' Liability Law (Consol. Laws, chap. 74; Laws of 1921, chap. 121).— [Rep.

upon the stevedore master towards his longshoremen employees to look for a concealed defect. It clearly follows that this defendant was under no duty towards this plaintiff to look to see whether the steel ledge beneath the covering was bent so that it would not support the plank. That feature of the case should have been eliminated by an appropriate limitation in the charge; but defendant's experienced trial counsel made no such request. The only question of negligence which, if any, the evidence raised was through the somewhat indefinite testimony that the plank which tilted appeared after the accident to be some one and one-half to two inches short " to have it come up close to the coaming." The sole question of negligence in the case was whether or not, in the exercise of due care, defendant's foreman should have taken that plank up and investigated its supports, had he noticed its shortness. There was no evidence at all indicating that there would have been any danger of the plank tilting, short as it was, if the ledge at that point had not been so bent down.

My conclusions are (a) that, without proof that such beams and ledges are usually of such width that such a shortness in such a plank would make it liable to tilt, no question of negligence was presented; and (b) that the charge, even without a request, in order to give a fair trial, should have limited the issue of negligence to the question whether or not, in the exercise of due care, defendant's foreman should have, noticed that the plank did not come up flush to the coaming, and whether or not, if he had noticed its such condition, he should, in the exercise of due care, have taken the plank up and examined beneath it. Of course, if he should not have done the latter thing, his failure to notice the shortness was not a proximate cause of the accident. It may be noted in passing that there was no proof at all that such beams and ledges are usually so narrow that such a shortage would render a plank liable to tilt. The defendant attempted to prove the usual construction in that respect; but the evidence was excluded without its counsel excepting. In short, as the evidence stood, I think that there should have been a nonsuit; and also that the charge was, in the respect above stated, entirely inadequate. Except for the indefiniteness of the evidence as above indicated, which may possibly be remedied

upon a new trial, I would recommend not only a reversal but a dismissal of the complaint.

Therefore, I advise that the judgment and order appealed from be reversed and a new trial granted, with costs to abide the event.

Blackmar, P. J., Rich and Manning, JJ., concur; Kelly, J., reads for affirmance.

Kelly, J. (dissenting):

I am forced to dissent. While I am disposed to agree with Mr. Justice Mills' criticism on the general nature of the charge in omitting to direct the attention of the jury to the particular defect claimed and whether its existence would be ascertained by reasonable inspection, still the defendant did not ask for specific instructions. I do not agree that as matter of law there was no duty on the master to examine the support for the planks. I think that in regard to the sufficiency and safety of the hatch cover of loose boards which was the floor upon which the men were put to work, a much greater degree of care was necessary than in the case of the " ringbolt " in *Liverani* v. *Clark & Son* (191 App. Div. 337; revd., 231 N. Y. 178), and, applying the law as laid down by the Court of Appeals in that case, to the facts here, the short plank was a readily visible indication of a defect.

I think a jury might say, in view of the importance of a secure floor, the planks in the hatch being laid loose, that reasonable care might require the foreman in charge to test the stability of the flooring. He made no such test, indeed it does not appear that he did anything. While it is true the men used this hatch cover as a floor previous to the accident without mishap, I think it would still be for the jury to say whether reasonable inspection would not have disclosed this defect in the support which with the short plank brought about the injury to the plaintiff. In a hatch cover such as this, the fact that one of the planks was one and one-half to two inches short was a serious defect if the planks were held up by a narrow flange beneath.

Judgment and order reversed and a new trial granted, with costs to abide the event.